78 Cal.Rptr. 528]

[Crim. No. 7176.   First Dist., Div. One.   June 12, 1969.]

THE PEOPLE, Plaintiff and Appellant, v. JUSTIN PLANE,
Defendant and Respondent.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Kelly, Deputy Attorneys General, for Plaintiff and Appellant. ,

Samuel Tenenbaum for Defendant and Respondent.

ELKINGTON, J.—The People appeal from an order of the superior court setting aside an information charging defendant Justin Plane with possession of marijuana. (Health & Saf. Code, § 11530.) The order was based upon the court's conclusion that the incriminating evidence resulted from a violation of Plane's Fourth Amendment rights.

Plane lived in an apartment of an eight-apartment building. He had had disagreements with his landlord, and had changed the lock on his apartment door. On the evening of

September 2, 1967, when Plane left his apartment to make a telephone call, he was arrested outside the apartment door. The officer asked "if he wanted to go into his apartment to get any clothes or anything and he just slammed the door and said, 'Let's go.'" "All the lights were lit in the apartment, nothing was turned off," and Plane's cat was left behind.

The landlord had had a fire in the building. Knowing that the lights were on in Plane's apartment and suspecting that the gas stove might be lit, he was fearful for the safety of the building and its tenants. He also knew that Plane's cat was in the apartment unfed and unattended. He could not readily check the safety of the apartment for he did not have a key thereto. Deciding nevertheless to enter, but conscious of his strained relations with Plane, the landlord "called the Police Department and told them if they would be a witness while [he] went in to check the apartment to make sure it was in safe condition." The next day, in the presence of Police Officer Kitchen, the landlord and the occupant of a neighboring apartment lifted a rear screen door off its rollers and entered the apartment through an unlocked inner glass door. The officer did not participate in effecting the entry. He had been advised that the tenant of the apartment was in jail. The apartment was secured, and the cat was rescued by the officer and delivered to the S.P.C.A. While in the apartment the officer saw some growing plants which he identified as marijuana. Because he was not completely certain of his identification he telephoned an expert, Police Sergeant Nye. Sergeant Nye responded, entered the apartment in the presence of the others, and positively identified the plants as marijuana.

Plane's contentions before the superior court, and here, are: (1) The apartment owner had no right to enter the apartment; but if it be determined that he did, then (2) Officer Kitchen had no such right even at the owner's invitation; but even if that officer acted properly, nevertheless (3) Sergeant Nye's later entry was unjustified and violative of the Fourth Amendment.

█ We think it beyond rational argument that the apartment landlord here, concerned and responsible for the safety of his tenants and the building, knowing that Plane had unexpectedly been arrested, leaving behind him burning lights, a pet and a reasonable possibility of an unattended lighted stove, properly entered the apartment to insure the building's safety.

We are offered, and we find, no case precedents to guide us in resolving Plane's remaining contentions. In determining the reasonableness of the respective entries of Officer Kitchen and Sergeant Nye we therefore look to the basic test expressed by our Supreme Court in *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577], as follows: ▮ ▪ ''There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case [citations].''

▮ We shall first discuss the entry of Officer Kitchen.

It had become necessary, in the interest of Plane and other tenants of the building, to enter and secure the apartment and rescue the pet. The entry was for the purposes stated—not to make a search of the apartment. Neither the landlord nor the officer knew, or suspected the presence, of marijuana therein. Officer Kitchen was invited into the apartment by the landlord who (as we have concluded) was legally entitled to be there. Because of past difficulties with his tenant the landlord —we think reasonably—wished to have an official witness to his conduct while in the apartment. The presence of such a witness was also beneficial to Plane. The landlord stated, ''I wanted him to stand by as a witness so nothing would be taken out of the apartment, or be accused of taking anything [*sic*].'' Asked why he entered the apartment, he replied, ''For the safety of it. The lights were burning all night in there and I would shut them off partially, and in case he did have the stove on. . . .''

The officer took no part in effecting the entry to the apartment; at the landlord's request he followed the others in. The landlord was not an agent of the police; more properly the policeman may be considered as acting for the landlord and Plane. ▮ The substance, suspected by the officer to be marijuana, was not uncovered by a search—it was in plain sight. ''[T]he officer, once in the room, did not have to blind himself to what was in plain sight simply because it was disconnected with the purpose for which he entered.'' (*People* v. *Jackson,* 198 Cal.App.2d 698, 703 [18 Cal.Rptr. 214]; see also *People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665].) ''Where a lawful entry has occurred the seizure of contraband observed in plain sight is not unreasonable; on the contrary, it is the lawful duty of the police officer.'' (*People* v. *Kampmann,* 258 Cal.App.2d 529, 533 [65 Cal.Rptr. 798]; see also Health & Saf. Code, § 11650.)

Our instant inquiry is whether the state, personified by Officer Kitchen, acted unreasonably, thereby violating Plane's Fourth Amendment rights. Reviewing the totality of the facts and circumstances of the case—the total atmosphere—we have no difficulty in concluding that the conduct of Officer Kitchen was reasonable and proper.

A somewhat similar situation was presented in *People* v. *Rightnour*, 243 Cal.App.2d 663 [52 Cal.Rptr. 654]. In *Rightnour* the defendant was residing in a hotel room. The maid, in the absence of the defendant, entered the room for routine cleaning. When she entered the room she discovered it in extreme disarray, including a lamp knocked over, window blinds torn down, and some burnt bedding. She reported it to the owner, who entered to view the damage. The owner called the police because "he was concerned about the safety of his tenants and his building because of the 'fire problem' and the possibility of burglary." (P. 666.) When the officers arrived, the owner took them to the room to "observe its condition and see what could be done about it." (P. 667.) At the time of their entry, the officers "had no idea that it would contain any narcotics or narcotics paraphernalia, but upon entering the room they saw in plain view a needle, syringe and other items." No search was conducted, and the contraband was seized. On appeal the defendant complained that the entries by the maid, the owner and the police were illegal within the meaning of the Fourth Amendment. The court held that "This is not the type of entry which is proscribed by the Fourth Amendment, but is entirely consistent with a rational line of actions pursued by reasonable people in the ordinary performance of their daily duties while going about their lawful affairs. . . ." (Pp. 668-669.) "Here, there is no evidence showing that the officers initiated the entry into the room, nor that they had any knowledge or suspicion of any contraband there before they entered." (P. 670).

We turn now to Plane's final contention relating to Sergeant Nye.

As we have indicated, Officer Kitchen, wishing to be absolutely certain of his identification of the suspected substance, called Sergeant Nye. The latter's appearance on the scene did not amount to an entry by the police—Officer Kitchen was already there. The sergeant's appraisal of the substance might very well have exonerated Plane from any suspicion, thus relieving him of further investigation or a

possible future entry. We think the legitimate requirements of law enforcement allowed Officer Kitchen, rightfully in Plane's apartment, who reasonably suspected that a felony was therein being committed, to call in a brother officer for the purpose of confirming or invalidating his identification.

Moreover, we note that the parties stipulated *"that the marijuana was identified by Officer Kitchen."* Having so identified the substance as contraband that officer was entitled to take it into his possession, and thereafter to arrest Plane for the offense involved. No violence to constitutional rights resulted from the officer's desire for a higher degree of certainty in his identification.

Since the officers were legally authorized to take Plane's marijuana into their custody there is no merit to the contention that they should have secured a search warrant. Since we find no violation of Plane's Fourth Amendment rights, it appears that he was properly committed upon reasonable or probable cause. (See Pen. Code, § 995.)

The order setting aside the information is reversed.

Molinari, P. J., and Sims, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 6, 1969. Peters, J., was of the opinion that the petition should be granted.