**David LARKINS and Rebecca Larkins, Appellants**

v.

**J.J. MILLER; John Akin; and Akin & Miller Land Developers, Appellees.**

**No. 2006–CA–002043–MR.**

Court of Appeals of Kentucky.

Oct. 26, 2007.

Eric C. Deters, Independence, KY, for appellant.

Jason C. Kuhlman, Michael M. Sketch, Covington, KY, for appellees.

Before THOMPSON and WINE, Judges; HENRY,[1] Senior Judge.

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

*OPINION*

THOMPSON, Judge.

David and Rebecca Larkins (the Larkins), husband and wife, appeal the Boone Circuit Court's grant of summary judgment in favor of J.J. Miller, John Akin, and Akin and Miller Land Developers (the "Developers"), against their claims for breach of contract and fraud. For the reasons set forth below, we affirm.

According to Rebecca's deposition testimony, in March 2000, she contacted John Akin about the possibility of purchasing a parcel of land in the Parlor Grove Subdivision located in Hebron, Kentucky. Following this communication, the Larkins and Akin met at Lot 270, in Parlor Grove, to discuss the possibility of the couple purchasing the lot.

After this meeting, according to David's deposition testimony, the Larkins met Akin at the lot again, and Akin made a comment that the slope of the property would result in additional construction costs. However, Akin said that the additional costs would not exceed a few thousand dollars. A few days later, the Larkins decided to purchase the property.

In his deposition, David testified that Akin came over to the Larkins' residence on May 19, 2000, and the parties completed the entire property transaction. During the course of the meeting, the Larkins and Akin read and discussed the Thelen Report. This report contained the written findings from a geotechnical study of the lots of Parlor Grove and listed construction considerations on a lot-by-lot basis for the properties of Parlor Grove. According to David, Akin reaffirmed his estimate that the additional building costs associated with building on the sloped property would only be a few thousand dollars.

The Larkins testified that after receiving a copy of the portion of the Thelen Report pertaining to Lot 270, the purchase of the lot was completed by the signing and exchange of all the necessary documents. Specifically, David testified that a check for $160,000, representing the full purchase price of Lot 270, was tendered to Akin; that they signed the purchase agreement; and that the Larkins signed the Acknowledge and Release (Release) Agreement.

The Release provided, in pertinent part, the following:

NOW, THEREFORE, the parties hereto agree as follows:

I. ACKNOWLEDGMENT BY PURCHASERS

The Purchasers acknowledge that, prior to agreeing to purchase a hilltop residential lot from Akin and Miller Land Developers, they:

(1) Have had the opportunity to freely and fully inspect the hilltop residential lot and its surroundings, including conducting any testing of the lot and its surroundings they desired;

(2) Received a complete copy of the geotechnical report, dated January 29, 1999, prepared by G.J. Thelen & Associates, Inc. (the "Thelen Report") regarding the hilltop residential lots for sale by Akin and Miller Land Developers;

(3) Had an opportunity to freely and fully review and consider the contents of the Thelen Report;

(4) Had an opportunity to freely and fully discuss the contents of the Thelen Report with Thelen or any other individual of their choice knowledgeable regarding slope stability and other related issues;

(5) Were aware that Thelen is a separate and independent entity from Akin and Miller Land Developers and is not an employee, agent, or representative of Akin and Miller Land Developers; and

(6) Have elected to proceed to purchase a hilltop residential lot from Akin and Miller Land Developers with full knowledge of the slope stability and related issues addressed in the Thelen Report.

II.  NO RELIANCE

The Purchasers acknowledge that neither Akin and Miller Land Developers nor Miller, individually, or Akin, individually, are experts in slope stability or related issues and therefore the Purchasers have not acted in reliance on any representations made regarding slope stability or related issues by or on behalf of Akin and Miller Land Developers, Miller, individually, or Akin, individually.

III.  RELEASE

In consideration of Akin and Miller Land Developers agreeing to sell a hilltop residential lot to Purchasers, Purchasers do hereby for themselves, their heirs, executors, administrators, successors, and assigns, release and forever discharge Akin and Miller Land Developers, Miller, individually, and Akin, individually, their heirs, executors, administrators, successors, and assigns, from all claims and demands, actions, or causes of action, which have arisen or which may arise, related to, either directly or indirectly, slope stability or any other directly or indirectly related issue.

Following the purchase of the lot, due to their financial circumstances, the Larkins were unable to begin the construction process on their lot for a period of five years. When they began the construction process in 2005, the Larkins hired a company to estimate the cost of construction for building on their lot with an emphasis on the additional costs associated with the slope of the property. According to the Larkins, this company estimated that the additional costs associated with building on the sloped property would be $83,000.

In response to this estimate, on September 9, 2005, the Larkins filed suit against the Developers for breach of contract and fraud. The Larkins claimed that the Developers breached the purchase contract when the Developers failed to deliver Lot 270 to them in a condition fit for the purpose for which they purchased the property. They claimed that the Developers committed fraud when Akin told them that the additional costs of construction would only be a few thousand dollars when the costs were $83,000.

Following further proceedings, the Developers filed a motion for summary judgment. Their primary argument was that the Release, signed by the Larkins, entitled them to a judgment of dismissal as a matter of law. The Larkins argued that the Release was an invalid contract because it was not supported by valuable consideration. After numerous briefs were filed on the issue, the trial court granted the Developers' motion for summary judgment. This appeal follows.

The Larkins contend that the trial court erred by granting the Developers' motion for summary judgment. The Larkins argue that the purchase of the property was completed prior to their signing of the Release on July 14, 2000. Thus, they contend that the Release is an invalid and unenforceable contract because it was not supported by valuable consideration as they did not receive any benefit in return for signing the Release.

As our standard of review, we observe that summary judgment is proper when, as a matter of law, it appears that it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky.1991). The reviewing court must view the record in a light most favorable to the party opposing the motion for

summary judgment and resolve all doubts in his favor. *Id.* at 480. Finally, we review *de novo* the trial court's judgment and afford its conclusion no deference. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App.2000).

We first note that the Larkins' factual allegations stated in their appellate brief are at odds with their deposition testimony offered to the trial court. In their depositions, as set out earlier in this opinion, the Larkins testified that the property transaction, including the signing of the Release, was completed during a single meeting in their home in May 2000. Despite this testimony, in their appellate brief, they assert that they signed the Release on July 14, 2000, after the property transaction had already been completed.

■ Although the Larkins have reformulated their factual assertions since leaving the trial court, such reformulations are proscribed as an impermissible appellate practice. *Smith v. Commonwealth*, 41 S.W.3d 458, 461 (Ky.App.2001). A party's assertions before the appellate court must be its assertions before the trial court. *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976). However, we need not decide which set of facts to accept because the Developers are entitled to a judgment as a matter of law under both.

■ Accepting the Larkins' trial facts as true, since the entire transaction was completed during the May meeting, the Release signed by the Larkins was a valid contract as it was supported by valuable consideration as recited in Part III of the Release. In *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 107 (Ky.2003), the court held that a release is an agreement between parties where one party surrenders the right to sue the other party for a claim that might arise.

■ After determining that a contract is valid, a court should interpret the terms of the contract according to their plain and ordinary meaning. *Nationwide Mutual Insurance Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky.1999). Applying this rule of law, the Larkins signed a Release that surrendered any claim or action that they would have had against the developers due to the issue of the lot's slope stability. Consequently, the Larkins' breach of contract and fraud claims are disposed of by the terms of the Release; thus, the trial court's grant of summary judgment was proper.

■ Moreover, even if we accept the version of the facts asserted by the Larkins in their appellate brief, the Developers were still entitled to a judgment as a matter of law. The Larkins claim that they signed the Release on July 14, 2000, as reflected on the signature lines of the Release itself, but that the purchase had already been completed leaving the Release invalid for a lack of consideration.

However, the record reflects that the Larkins tendered a check to the Developers, dated July 14, 2000, the same date that they signed the Release.[2] This check constitutes valuable consideration and thus establishes the Release as a valid contract. And as has been previously set out in this opinion, the Release constitutes a surrender of the Larkins' right to bring an action related to Lot 270's slope stability.

For the foregoing reasons, the order of the Boone Circuit Court is affirmed.

ALL CONCUR.

---

**2.** Although several documents indicate that the purchase of the land was not completed during the May meeting, the Larkins disputed this contention during their depositions.