Filed 8/30/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID DROMY, | B242952 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC472802) |
| v. | |
| MARINA LUKOVSKY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Sonya Bekoff Molho for Defendant and Appellant.

Simkin & Associates, Inc., Michael J. Simkin; Cole & Loeterman, and Dana M. Cole for Plaintiff and Respondent.

––––––––––––––––––––

## INTRODUCTION

Civil Code section 1954, subdivision (b)[1] permits a landlord to enter a dwelling unit to exhibit the premises to prospective or actual purchasers during "normal business hours." In this case of first impression, we discuss the meaning and scope of the phrase "normal business hours" as it applies to the facts of the pending dispute.

Plaintiff and respondent David Dromy leased a condominium to defendant and appellant Marina Lukovsky. Dromy wishes to sell the property. The trial court issued a declaratory judgment permitting Dromy to hold open houses, under certain conditions, on weekend days between 1:00 p.m. and 4:30 p.m. Lukovsky contends that the declaratory judgment violates section 1954. We reject her arguments and affirm the judgment.

## FACTS

Dromy owns a residential condominium in Santa Monica. Under a lease she entered with Dromy's predecessor in interest, Lukovsky has been a tenant of the property since 1994. The property is subject to the Santa Monica rent control regulatory scheme, which places restrictions on a landlord's ability to evict a tenant. (Santa Monica Charter, art. XVIII, § 1806; Santa Monica Mun. Code, § 9000 et seq.)

In approximately 2010, Dromy entered into a listing agreement for the sale of the property with Dafna Milstein, a licensed real estate agent. Although Lukovsky has allowed Milstein to privately show the property to prospective purchasers by appointment, she has refused to permit open houses on weekends.

Frustrated by what he perceived to be an undue barrier to his ability to sell the property, Dromy filed a complaint for declaratory relief against Lukovsky. In the complaint, Dromy sought a declaration regarding his rights and duties under section 1954 to enter the property for the purpose of exhibiting it to prospective purchasers.

---

[1] Except as otherwise in indicated, all statutory references in this opinion are to the Civil Code.

Shortly after he commenced the action, Dromy filed a motion for summary judgment. In a declaration supporting the motion, Milstein stated: "In my professional opinion, Ms. Lukovsky's refusal to permit weekend open house showings at the subject property has made it much more difficult to find a prospective purchaser. The custom and practice in the residential real estate community is to conduct weekend open houses in order to market properties more effectively and expose listed properties to the general public." Lukovsky conceded that California real estate agents customarily hold open houses on weekends.

At the hearing on the motion, the court announced it was ruling in Dromy's favor. The court also indicated it needed to fashion a judgment regarding Dromy's ability to enter the property that was fair and reasonable to both sides. Lukovsky's counsel requested that any judgment include safeguards against the landlord's excessive intrusion of Lukovsky's right to quiet enjoyment. For example, Lukovsky claimed that during one showing of the property, some of her possessions were "disturbed" when she was not present. Lukovsky's counsel thus requested that the court require Dromy to have a licensed real estate agent present during open houses.

After the hearing, the court entered a lengthy and thoughtful order granting the motion. The court concluded that as a matter of law, section 1954 "permits landlords to hold open houses on weekends with reasonable notice."

On June 28, 2012, the court entered a judgment in Dromy's favor. The judgment provided that Dromy's designated licensed real estate agent shall be entitled to hold two open houses per month. It further stated that open houses "may be held on weekend days between 1:00 p.m. and 4:30 p.m." and that Dromy's designated agent "shall be present and defendant may be present during any and all such open houses." Finally, the judgment stated that Dromy's designated agent "shall give 10 days advance email notice to defendant of proposed weekend open house dates, and defendant shall respond within 48 hours of receipt of same acknowledging the proposed dates or providing alternative weekend dates." Lukovsky filed a timely notice of appeal of the judgment.

3

## DISCUSSION

The superior court is required to grant a motion for summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review a summary judgment motion de novo, viewing the evidence in a light most favorable to the nonmoving party. (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1548.)

The issues raised by a motion for summary judgment are framed by the pleadings. (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 931.) In this case, Dromy's complaint presents a relatively narrow issue of law, requiring the court to interpret the meaning of section 1954. There are no triable issues of material facts.

1.      *Rules of Statutory Interpretation*

" 'The fundamental task of statutory construction is to "ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute." [Citation.] The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment.' " (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13, 21 (*Apartment Assn.*).)

" ' "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute." ' " *Apartment Assn.*, *supra*, 173 Cal.App.4th at p. 21.) "Where, as here, the plain meaning of a statute is insufficient to resolve a question of interpretation, we may review the legislative history of the statute and the wider historical circumstances of its enactment, as well as the public policy underlying the law." (*Ibid.*)

2.      *The Language of the Statute*

Section 1954 "forbids the landlord from entering a dwelling, except in specified circumstances." (*Spinks v. Equity Residential Briarwood Apartments* (2009)

4

171 Cal.App.4th 1004, 1049.) Subdivision (a) of section 1954 states that a landlord may enter a dwelling unit "only" in the following cases:

"(1) In case of emergency.

"(2) To make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, or *exhibit the dwelling unit to prospective or actual purchasers*, mortgagees, tenants, workers, or contractors or to make an inspection pursuant to subdivision (f) of Section 1950.5.

"(3) When the tenant has abandoned or surrendered the premises.

"(4) Pursuant to court order." (Italics added.)

Section 1954, subdivision (b) provides: "Except in cases of emergency or when the tenant has abandoned or surrendered the premises, *entry may not be made during other than normal business hours* unless the tenant consents to an entry during other than normal business hours at the time of entry." (Italics added.)

The plain language of the statute limits the time period during which a landlord may exhibit a dwelling to a prospective or actual purchaser. Unless the tenant agrees otherwise, a landlord may only exhibit the dwelling during "normal business hours." Nothing in the statute, however, defines this phrase.

Dromy argues that the statute does not preclude weekend open houses because it states nothing about the *days* on which a landlord may exhibit a dwelling, but merely limits the *hours* he or she may do so. This argument has some merit. If the Legislature had wanted to categorically bar landlords from entering dwellings during the weekends, it could have easily done so. But this point is not dispositive. We cannot ascertain the meaning of the phrase "normal business hours" by only examining the four corners of the statute.

3. *Legislative History*

In 1975, the Legislature enacted section 1954 pursuant to Senate Bill (SB) 314. (Sen. Bill No. 314 (1975-1976 Reg. Sess.); Stats. 1975, ch. 302, 2, p. 750.) The Legislative Counsel's Digest of SB 314 stated: "Existing statutory law does not define the rights of the landlords and tenants relating to entry by the landlord. [¶] This bill

5

would specify the situations in and the conditions under which a landlord may enter a leased dwelling unit." (Legis. Counsel's Dig., Sen. Bill No. 314 (1975-1976 Reg. Sess.).)

The initial draft of section 1954 broadly prohibited a landlord from reserving in a rental agreement any right to physically enter a dwelling without a tenant's permission. (Sen. Bill No. 314 (1975-1976 Reg. Sess.), as introduced Jan. 29, 1975, § 2.) By the time the statute was codified, however, it permitted landlords to enter the premises for a variety of reasons, including exhibiting the dwelling unit to prospective or actual purchasers during normal business hours.[2] (Stats. 1975, ch. 302, § 2, p. 750.)

In a letter to Governor Brown after SB 314 was passed by both houses of the Legislature, the author of the bill, Senator Nicholas C. Petris, stated: "Section 2 of the bill [Civil Code section 1954] puts into statute the common law as to landlord's right of entry. It is based on the Uniform Residential Landlord and Tenant Act, and is believed to be declaratory of existing law. It was inserted in the bill at the request of the California Association of Realtors, because they weren't satisfied with our original language . . . ." (Senator Nicholas C. Petris, letter to Governor Edmund G. Brown, Jr., Aug. 14, 1975.)

Under California common law as it existed in 1975, a landlord could enter a dwelling unit in cases of emergency (*People v. Plane* (1969) 274 Cal.App.2d 1, 3) or to make urgent repairs. (*Kulawitz v. Pacific Etc. Paper Co.* (1944) 25 Cal.2d 664, 683.) We have found no cases, however, decided in or before 1975 that held a landlord could enter residential property without the tenant's consent in order to exhibit it to a prospective or actual purchaser. Thus Senator Petris's reference to common law does not help us understand the purpose and meaning of the provisions of section 1954 at issue in this case.

Senator Petris's reliance on the Uniform Residential Landlord and Tenant Act is more helpful. The model act provides: "A tenant shall not *unreasonably* withhold

---

[2] Although section 1954 has been amended several times since 1975, the amendments do not materially alter our analysis. (See Stats. 2002, ch. 301, § 3; Stats. 2002, ch. 1061, § 2.5; Stats. 2003, ch. 62, § 18; Stats. 2003, ch. 787, § 1.)

consent to the landlord to enter into the dwelling unit in order to inspect the premises, make necessary or agreed repairs, decorations, alterations, or improvements, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen, or contractors." (7B West's U. Laws Ann. (2006) U. Res. Landlord & Tenant Act, § 3.103, subd. (a), italics added.) It further provides a landlord "shall not abuse the right of access or use it to harass the tenant," and that a landlord "may enter only at *reasonable* times." (*Id.*, § 3.103, subd. (c), italics added.) As we explain *post*, we adopt the reasonableness standard of the Uniform Residential Landlord and Tenant Act in interpreting section 1954.

    4.    *The Policies Underlying Section 1954*

The language of section 1954 and its legislative history indicate that the Legislature was attempting to balance two competing policies when it enacted the statute. The first is the tenant's right to quiet enjoyment. "In the absence of language to the contrary, every lease contains an implied covenant of quiet enjoyment, whereby the landlord impliedly covenants that the tenant shall have quiet enjoyment and possession of the premises."[3] (*Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 588.)

On the other hand, landlords have a strong interest in being able to sell their property if they choose to do so. The law generally favors free alienability of property. (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 494.) A landlord's ability to sell his or her property may be negatively impacted if the landlord cannot exhibit the property to prospective buyers at reasonable times. (*Glenn v. Keyes* (Utah 1944) 154 P.2d 642, 644 ["It is apparent the sales of homes would be greatly retarded, if not entirely

---

[3] In determining the meaning and purpose of section 1954, we are mindful of section 1953, which was enacted simultaneously with section 1954. (Sen. Bill No. 314 (1975-1976 Reg. Sess.) § 1; Stats. 1975, ch. 302, § 1, p. 749.) Section 1953 provides that any provision of a residential lease by which the tenant agrees to modify or waive certain essential rights, including the tenant's rights under section 1954, is void as contrary to public policy. (§ 1953, subd. (a); see *Lewis Operating Corp. v. Superior Court* (2011) 200 Cal.App.4th 940, 948 [Section 1953 "is designed to protect a tenant's basic, essential need for shelter"].)

7

suspended, if a prospective buyer could not enter at a reasonable time and view the premises"].)

The use of the phrase "normal business hours" in the statute appears to be a means of balancing these two competing policies. Unfortunately, the Legislature gave no guidance as to what the phrase means. When section 1954 was enacted, Black's Law Dictionary defined "business hours" as meaning: "In general those hours during which persons in the community generally keep their places open for the transaction of business." (Black's Law Dict. (4th ed. 1968) p. 249, col. 2.)

For our purposes, the relevant community consists of licensed professionals working in the residential real estate sales business. It is undisputed that the custom and practice of licensed real estate agents is to hold open houses during weekends, thereby making viewing residential property more convenient for prospective purchasers, most of whom work during weekdays.

5. *The Judgment Complies with Section 1954*

Based on our review of the words of section 1954 as they would have been understood when the statute was enacted, section 1954's legislative history, and the underlying policies of the statute, we hold that the term "normal business hours" in section 1954 means objectively reasonable hours under the facts and circumstances of the case, keeping in mind the right of tenants to quiet enjoyment and the right of landlords to sell their property. Thus when a landlord seeks to exhibit a leased dwelling unit to prospective or actual purchasers, he or she may only enter the property during reasonable hours, unless the tenant consents to another time.

Here, the trial court's judgment balances the competing policies incorporated in section 1954. Under the judgment, Dromy and his agent can hold open houses only twice per month, during limited afternoon hours. Further, after receiving notice, Lukovsky can propose alternative days for open houses. The judgment also includes safeguards designed to address Lukovsky's concerns regarding third parties having access to her personal property. We conclude the judgment is reasonable under the facts and circumstances and that it complies with the requirements of section 1954, subdivision (b).

Lukovsky argues that the phrase "normal business hours" necessarily excludes Sundays because Sundays are defined as state holidays under Government Code section 6700, subdivision (a). We disagree. The significance of a day being designated a holiday by the state is that generally government offices are closed on those days. (See, e.g., Gov. Code, § 6702 [public offices of a city shall be closed on state holidays unless otherwise provided by charter, ordinance or resolution]; Gov. Code, § 6707 [when the last day for filing an instrument with a state agency falls upon a Saturday or holiday, the instrument may be filed on the next business day]; Code Civ. Proc., §§ 134, 135 [courts are closed on judicial holidays, which include holidays listed in Government Code section 6700].) Lukovsky cites no authority indicating Government Code section 6700 has any connection or relevance to section 1954.

## DISPOSITION

The judgment is affirmed. Respondent David Dromy is awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

9