RENDERED:  FEBRUARY 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1562-MR

JUDITH A. THOMPSON,
EXECUTRIX OF THE ESTATE OF
TIMOTHY THOMPSON, DECEASED                                APPELLANT


APPEAL FROM WOODFORD CIRCUIT COURT
v.       HONORABLE BRIAN K. PRIVETT, JUDGE
ACTION NO. 18-CI-00237


MICHAEL LAWSON                                             APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND TAYLOR, JUDGES.

COMBS, JUDGE:  Timothy Thompson[1] appeals the summary judgment of the

Woodford Circuit Court entered in this breach-of-contract action on September 25,

2019.  After our review, we affirm.

---

[1] On September 20, 2020, during the pendency of this appeal, Timothy Thompson passed away. By our own motion, we placed the appeal in abeyance pending appointment of an administrator, revival of this action, and a motion to substitute parties.  Judith A. Thompson has since been duly

Timothy Thompson purchased from Michael Lawson a fifty percent (50%) stake in an enterprise known as Helmsley Subdivision, Inc. ("Helmsley"). Helmsley was formed by Lawson and Thompson in 1994 with each originally owning fifty (50) shares of the corporation.

Helmsley purchased and developed real property. It acquired a tract of farmland in Woodford County and developed an up-scale neighborhood referred to as "Helmsley I." In 2005, Helmsley acquired for development an adjoining parcel of real property -- nearly 25 acres in Woodford County. The property was referred to as "Helmsley II" and as "The Shire." As reflected in a recorded plat, The Shire was divided into twenty (20) numbered lots. A development plan anticipated that a four-unit, multi-family structure would be built on each lot. Helmsley was granted a zoning change to allow construction of eighty (80) condominiums.

In 2006, Lawson decided to sell his interest in Helmsley. Thompson wanted to purchase Lawson's shares and to continue development of The Shire. They reached an agreement for the sale and purchase of Lawson's shares. They executed a written agreement for the transfer of shares on August 25, 2006.

---

appointed as Executrix of the Estate and has complied with all requirements for revival of this action. Therefore, we have removed this matter from abeyance and have placed it back on our active docket.

The agreement provides that the "total purchase price payable by Thompson to Lawson for Lawson's shares shall be one million dollars ($1,000,000.00), and in consideration therefor Lawson" would transfer his shares. The purchase price was to be paid in three installments. First, pursuant to Section 1(A)(i), Thompson was obligated to pay Lawson five hundred thousand dollars ($500,000.00) upon the transfer of the shares.

Next, under the provisions of Section 1(B)(i), Thompson was obligated to make a second installment payment of two hundred fifty thousand dollars ($250,000.00) upon the off-conveyance by Helmsley of two "parcels of real property" from The Shire that "shall each accommodate a four (4) unit residential structure." Alternatively, under the provisions of Section 1(B)(ii), the second installment payment would come due on April 15, 2007, but only if the loan-to-value ratio on the loan to Helmsley from United Bank & Trust Corporation was less than or equal to eighty percent (80%) following an advance made to fund this installment payment.

Finally, pursuant to Section 1(C)(i), Thompson was obligated to pay the remaining installment of two hundred fifty thousand dollars ($250,000.00) upon "the out-conveyance of the third and fourth parcels as described in sub-paragraph B, above[.]" Again, alternatively, the final installment payment would come due if the loan-to-value ratio on the loan to Helmsley from United Bank &

Trust was less than or equal to eighty percent (80%) following an advance made to fund this payment. Interest at five percent (5%) per annum was to accrue from the date of the transfer of shares until paid.

When the agreement was signed, Helmsley's principal assets were The Shire and the right to develop it. Lawson waived any lien rights in the property, and the parties agreed that he would have no responsibility for any existing or future debt of Helmsley.

Pursuant to the terms of the agreement, Lawson transferred his shares in Helmsley to Thompson, and Thompson made the initial payment of five hundred thousand dollars ($500,000.00) to Lawson. Thompson made the next payment of the two hundred fifty thousand dollars ($250,000.00) to Lawson in January 2008, leaving one payment to be made.

The year 2008 marked the onset of the global financial crisis, and The Shire began to fail. Ultimately, Helmsley built only eight condominiums; seven were sold. Helmsley defaulted on its loans, and United Bank & Trust initiated foreclosure proceedings. On behalf of Helmsley, Thompson was able to reach a settlement agreement with the bank. On February 9, 2011, all the remaining real property comprising The Shire was conveyed to EGT Properties, Inc., for one million thirty thousand dollars ($1,030,000.00). Thompson did not make the final installment payment of two hundred fifty thousand dollars ($250,000.00) to

Lawson. Nor did he pay the accrued interest required by the terms of the agreement.

On September 4, 2018, Lawson filed a lawsuit for breach of contract against Thompson in Woodford Circuit Court. Thompson answered and admitted the existence of the agreement. He averred that the parties' agreement "speaks for itself." However, he denied that the agreement had been breached. A period of discovery began.

On December 19, 2018, Lawson was deposed. Thompson served his verified written discovery responses on January 28, 2019; he was deposed on March 25, 2019. Two days later, on March 27, 2019, Thompson filed a motion for pre-trial conference. Lawson agreed to participate, but he noted his intention to file a motion for summary judgment once he received a transcript of Thompson's deposition.

On June 20, 2019, Lawson filed a motion for summary judgment, contending that in light of the undisputed facts, Thompson breached the terms of the agreement by failing to pay Lawson for his interest in Helmsley. Lawson argued that he was entitled to judgment as a matter of law. In response, Thompson argued that the motion was premature because "non-party discovery" had not yet occurred and that a judgment in favor of Lawson was unsupported by the record. In an order entered on September 25, 2009, the Woodford Circuit Court concluded

that there was no genuine dispute concerning the material facts of the transaction. It analogized the provisions of the agreement to a payment schedule for the purchase price of the shares. It concluded that Thompson breached the parties' agreement by failing to make the final installment payment and consequently that Lawson was entitled to judgment as a matter of law. This appeal followed.

Appellant argues that the circuit court erred by granting summary judgment in favor of Lawson, contending that the plain language of the contract does not require payment of the final installment of two hundred fifty thousand dollars ($250,000.00) where the "third and fourth parcels did not each accommodate a four (4) unit residential structure." Because no four-unit residential structures were ever built on these two lots in The Shire, he contends that the final payment provision of the parties' agreement was never triggered and thus that Thompson was not obligated to make the payment. Lawson contends that he was entitled to the entirety of the agreed purchase price and that the final installment came due following the conveyance of Helmsley's interest in The Shire to EGT Properties. He argues that Thompson has attempted to fabricate an ambiguity in the contract where none exists.

Summary judgment is proper where there exists no material issue of fact, and the movant is entitled to judgment as a matter of law. CR[2] 56; *Steelvest,*

---

[2] Kentucky Rules of Civil Procedure.

*Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). "[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citing *First Commonwealth Bank of Prestonsburg v. West,* 55 S.W.3d 829, 835 (Ky. App. 2000)). The court's conclusions are subject to *de novo* review. *West*, 55 S.W.3d at 835-36. A contract provision is ambiguous where the provision is susceptible of multiple or inconsistent interpretations. *Transport Ins. Co. v. Ford*, 886 S.W.2d 901 (Ky. App. 1994). However, courts must not remake contracts for parties by creating ambiguity where none exists. *O.P. Link Handle Co. v. Wright*, 429 S.W.2d 842 (Ky. 1968). Instead, parties are bound by the clear meaning of the language used. *See Larkins v. Miller*, 239 S.W.3d 112, 115 (Ky. App. 2007) (stating that "a court should interpret the terms of the contract according to their plain and ordinary meaning[]").

The parties' agreement provides, in pertinent part, as follows:

1. The total purchase price payable by Thompson to Lawson for Lawson's shares shall be one million dollars ($1,000,000.00), and in consideration therefor Lawson shall transfer to Thompson his fifty (50) shares in the Corporation. The purchase price shall be payable as follows:

A. Thompson shall pay to Lawson five hundred thousand dollars ($500,000.00) commensurate with the execution and delivery by Lawson to Thompson of a share

certificate evidencing the transfer of Lawson's shares to Thompson . . . .

B. Thompson shall pay to Lawson two hundred fifty thousand dollars ($250,000.00) as follows:

i.) Immediately after the out-conveyance by [Helmsley] of two (2) parcels of real property from [The Shire], which two (2) parcels shall each accommodate a four (4) unit residential structure; or

ii.) On April 15, 2007, but only if, and to the extent, that the Loan to Value Ratio, as determined by the United Bank & Trust Company, Versailles, Kentucky on its loan to [Helmsley] secured by the 24.409 acres comprising [The Shire] after an advance is made on such loan to fund this payment, is less than or equal to eighty percent (80%).

Interest shall be payable on this two hundred fifty thousand dollars ($250,000.00) from the date of the transfer of shares until paid at five percent (5%) per annum.

C. Thompson shall pay to Lawson two hundred fifty thousand dollars ($250,000.00) as follows:

i.) Immediately after the out-conveyance of the third and fourth parcels as described in sub-paragraph B, above; or

ii.) The payment referred to in sub-paragraph B, above, has been made, but only if, and to the extent, that the Loan to Value Ratio, as determined by the United Bank & Trust Company, Versailles, Kentucky on its loans to [Helmsley] secured by the 24.409 acres comprising [The Shire] after an advance is made on such loan to fund this payment, is less than or equal to eighty percent (80%).

Interest shall be payable on this two hundred fifty thousand dollars ($250,000.00) from the date of the

transfer of shares until paid at five percent (5%) per annum.

The provisions of the parties' agreement are clear. Under the terms of the agreement, the "total purchase price" for Lawson's shares was one million dollars ($1,000,000.00). The agreement provided that the purchase price would be paid in installments. The final installment of two hundred fifty thousand dollars ($250,000.00) was due upon the "out-conveyances" of an additional two "parcels of real property" that "accommodate" residential structures *or* upon satisfaction of certain loan-to-value ratios. Nothing in the language of the parties' agreement indicates that payment was conditioned on the development of the lots, the sale of condominiums, or the conveyance of the lots for a profit. Instead, the payment of the final two hundred fifty thousand dollars ($250,000.00) was triggered by the mere conveyance of an additional two lots in The Shire. The lots were conveyed by deed to EGT Properties on February 9, 2011. In construing the language of the agreement according to its ordinary meaning and without resort to extrinsic evidence, the circuit court did not err by concluding that the terms of the parties' agreement were unambiguous.

Appellant also contends that summary judgment was prematurely entered because key depositions had yet to be taken and that there was no adequate opportunity to take the testimony of: attorneys who drafted the parties' agreement; the master commissioner through whom Helmsley's property at The Shire was

-9-

conveyed; and bank representatives responsible for the financing of the development.

Again, an unambiguous contract must be enforced according to its "ordinary meaning without resort to extrinsic evidence." *Frear*, 103 S.W.3d at 106. The "parol evidence rule prevents a party from introducing testimony or other extrinsic evidence to vary or alter the terms of a written agreement." *Caudill v. Acton*, 175 S.W.3d 617, 620 (Ky. App. 2004) (footnote omitted). Because the court may not modify the express terms of a contract, it is limited to a consideration of the four corners of the agreement. Individuals with tangential relationships to the contract did not need to be deposed in order for the trial court to enforce the contract according to its plain language. Appellant acknowledges as much in its brief. Because further discovery in this case was unnecessary, the circuit court did not err by granting summary judgment upon Lawson's motion.

We AFFIRM the summary judgment of the Woodford Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Escum L. Moore, III
Lexington, Kentucky

Robert L. Elliott
Georgetown, Kentucky

BRIEF FOR APPELLEE:

Patrick F. Estill
Lexington, Kentucky