RENDERED:  NOVEMBER 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0663-MR

JAMES JAVONTE CRITE                                                   APPELLANT

v.
APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JAY A. WETHINGTON, JUDGE
ACTION NO. 19-CR-01077

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, LAMBERT, AND McNEILL, JUDGES.

DIXON, JUDGE:  James Javonte Crite[1] appeals the Daviess Circuit Court order,

entered October 8, 2020, denying his motion to suppress evidence.  After careful

review of the record, briefs, and law, we affirm.

---

[1] Crite is also known as Jayleo Lawrence, and the record refers to him by his former and present legal names interchangeably.  We will use Crite, the name listed in Appellant's motion for belated appeal, in this Opinion.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Crite rented an apartment that was part of a fourplex building owned and managed by Century Property Management (Century). On July 9, 2019, Crite's brother contacted Century to notify them that Crite, who was schizophrenic, had ceased taking his medication and was being taken to the hospital. Crite's brother further reported that Crite's apartment was damaged – wires had been ripped from appliances, and the AC and electric were nonfunctional – and requested repairs be made during Crite's absence.

On that same day, an agent for Century inspected Crite's apartment to contemplate repairs and assess whether the damage constituted a fire hazard. The agent observed that wiring had been pulled from the hot water heater and the HVAC unit; the thermostat had been removed from the wall; the main breaker was off, but another breaker had been pried from the fuse box; the apartment was generally a wreck; it was hot inside due to the ambient temperature of 100 degrees; and a handgun was present on the coffee table. The agent reported her observations to Century's property manager but did not alert emergency services or other tenants of the fourplex.

The following day, after engaging the services of an electrician, the property manager contacted the Owensboro Police Department to request that officers meet them at Crite's apartment. In the recorded call to dispatch, the

property manager detailed the damage to the apartment and stated that she wanted to make sure the building was safe for other tenants. She further explained that officer assistance was requested because she did not feel safe given Crite's untreated schizophrenia, the uncertainty as to his present location after Crite was not admitted to the hospital, the damage to the apartment, the presence of a firearm, and because she had recently learned that Crite may be a felon. No efforts were made to contact Crite.

In response, Officers Nevitt and Matthews were dispatched to Crite's apartment. Both officers were advised prior to their arrival that Crite had an outstanding *capias* warrant. Additionally, Officer Matthews knew of Crite's status as a felon, though he could not remember whether he learned of it before or after he arrived on the scene. Nevertheless, both officers denied that their presence was in furtherance of a criminal investigation or the execution of the warrant.

After arriving at the apartment and receiving no response to their knocks, the officers informed the property manager that they had no reason to enter the apartment. The property manager persisted in her request that they enter to ensure it was safe, and after she unlocked the door, the officers entered to "clear" the apartment for threats. While "clearing" the apartment, the officers observed the handgun, the buttstock of what they recognized as a rifle sticking out of a couch, and ammunition on the floor. Thereafter, Crite arrived at the building

parking lot where he was arrested on the outstanding warrant.  Ultimately, the

officers confirmed Crite was a felon and seized the rifle and magazine.  The

handgun was determined to be a pellet gun.

Following his indictment for possession of a firearm by a convicted

felon,[2] Crite moved to suppress the evidence observed by the officers in his

apartment.  After conducting an evidentiary hearing, the trial court determined the

officers' presence was lawful and the rifle was in plain view and; thus, the motion

was denied.  Crite then entered a conditional guilty plea pursuant to RCr[3] 8.09, and

this appeal followed.  Additional facts will be introduced as they become relevant.

**STANDARD OF REVIEW**

"The Fourth Amendment to the U.S. Constitution and Section 10 of

the Kentucky Constitution[4] protect citizens from unreasonable searches and

seizures by the government." *Milam v. Commonwealth*, 483 S.W.3d 347, 349 (Ky.

2015) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. E. 2d

639 (1980)).  "It is fundamental that all searches without a warrant are

unreasonable unless it can be shown that they come within one of the exceptions to

---

[2]  Kentucky Revised Statutes (KRS) 527.040, a class D felony.

[3]  Kentucky Rules of Criminal Procedure.

[4]  Kentucky courts have consistently interpreted Section 10 of the Kentucky Constitution to be consistent in both rights and remedies with the federal Fourth Amendment.  *Parker v. Commonwealth*, 440 S.W.3d 381, 387 (Ky. 2014) (citing *Dunn v. Commonwealth*, 360 S.W.3d 751, 758 (Ky. 2012); *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011)).

the rule[.]" *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992). The Commonwealth bears the burden of demonstrating the applicability of a recognized exception. *Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky. 1979). Evidence seized as a result of an unreasonable search is subject to suppression. *See Warick v. Commonwealth*, 592 S.W.3d 276, 280-81 (Ky. 2019).

Our review of a pretrial motion to suppress is twofold. "First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence." *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019) (quoting *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015) (internal quotation marks omitted)). Second, we review *de novo* "the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Id*. (citation omitted). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). In assessing the evidence, we give due regard to the trial court's judgments on the credibility of the testifying officer and the reasonableness of their inferences. *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002).

# ANALYSIS

Plain view is an exception to the Fourth Amendment's warrant requirement, and it "applies when the object seized is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent." *Kerr v. Commonwealth*, 400 S.W.3d 250, 266 (Ky. 2013) (citing *Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990)). Pertaining to the second requirement, Crite asserts the court erred in determining that the landlord had the authority to both enter the apartment herself and permit entry by police.

Our review begins with the trial court's determination that the landlord's entry without notice or consent was authorized by the emergency arising from the damage to the apartment's electrical system. Pursuant to KRS 383.615(2) and the lease agreement, the landlord is authorized to enter Crite's apartment without his prior consent in the case of an emergency. As noted by the parties, the term "emergency" is not defined by either the statute or the lease; however, it is a basic tenet of both statutory interpretation and contract law that undefined terms should be accorded their plain meaning. *Commonwealth v. McBride*, 281 S.W.3d 799, 806 (Ky. 2009); *Larkins v. Miller*, 239 S.W.3d 112, 113 (Ky. App. 2007).

Defining an emergency as "[a] sudden and serious event or an unforeseen change in circumstances that calls for immediate action to avert,

-6-

control, or remedy harm[,]" Crite contends the evidence belies the court's finding. *Emergency*, BLACK'S LAW DICTIONARY 712 (7th ed. 1999). In support, Crite notes it was established that Century knew from its assessment the day prior that the main breaker was off, there were no flames or smoke, and the fuse box panel was cool to the touch. Additionally, Crite states that Century's decision not to alert the fire department, 911, or other tenants of any risk, and its approximate 24-hour delay in retaining an electrician, demonstrates that Century did not consider the matter emergent. Consequently, Crite insists that Century was required to give him two days' notice, pursuant to KRS 383.615(3), and Century's failure to do so rendered its entry unauthorized.

Conversely, the Commonwealth argues that substantial evidence supports the court's finding that the lease authorized Century's entry, and we agree.[5] Accepting Crite's proposed definition, there is no credible claim that the destruction of the apartment's electrical system was not an unforeseeable event. Further we are convinced that, despite the fact the damage had not presently resulted in a fire, given the apparent risk of harm to both property and life arising from pulled wires and a damaged fuse box, Century's immediate access to assess and ameliorate the risk was justified. Finally, we cannot agree that the possible 24-

---

[5] The Commonwealth disputes the applicability of KRS 383.615, but since the lease contains a substantively similar provision, we do not reach this issue.

hour delay in retaining an electrician, which is less than the notice period Crite maintains should apply, is of such duration as to preclude the court's finding. Thus, we find no error.

Next, Crite challenges Century's authority to permit police to enter and search his apartment.

We begin, as the parties and the trial court did, by acknowledging that it has long been held that a landlord is not authorized to consent to a warrantless search of a tenant's residence. *Chapman v. United States*, 365 U.S. 610, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961) (concluding that tenant's Fourth Amendment rights were violated, the Supreme Court rejected the claim that police entered leased premises in furtherance of landlord's common law right to view waste where evidence demonstrated the landlord reported suspected criminal activity and consented to search for the purposes of seeking proof); *Hall v. Commonwealth*, 438 S.W.3d 387 (Ky. App. 2014) (evidence suppressed after landlord unlocked tenant's door for police who were investigating possible drug trafficking). However, this matter is distinguishable where the trial court found that the officers' actions were not in pursuit of a criminal investigation. As Kentucky law has not addressed this issue, Crite renews his argument that this Court should follow the analysis of *United States v. Williams*, 354 F.3d 497 (6th Cir. 2003).

In *Williams*, the landlord became concerned that one of her four rental properties had a water leak after receiving the combined utility bill. *Id.* at 500. She and a niece entered the residence at issue 15 days later and noted the lights did not work, there were sparse furnishings, leaves were all over the floor, and there was an odd smell, but they did not find a leak in their limited search of the kitchen. *Id.* The niece reported their observations and their suspicion of drug activity to the Drug Enforcement Agency (DEA), and that afternoon two DEA agents met them at the residence. *Id.* at 500. The agents initially declined the landlord's request to inspect the property for the possible water leak, but despite having no reason to believe anyone was in the residence, an agent eventually accompanied her inside and inspected the residence since she was afraid to proceed alone. *Id.* at 500-01. The agent then discovered marijuana plants. *Id.* at 501. On appeal, the Sixth Circuit Court held that the agent's entry was not justified by any exception to the Fourth Amendment's warrant requirement. *Id.* at 510.

Herein, the trial court concluded that *Williams* was inapposite given the credible emergency at issue. In reaching this conclusion, the trial court contrasted the *Williams* landlord's two-week delay with Century's prompt action, the speculative water leak with the certain electrical damage, the report of suspected drug activity with a request for protection while undertaking necessary repairs, and the minimal risk of merely exacerbated property damage with the

possibility of loss of property and life. Additionally, the trial court found compelling the officers' testimony that their sole purpose was to alleviate Century's cited safety concerns, their acknowledgement that they had no independent basis to enter, and their claim that they did so only after Century insisted. We are mindful that credibility determinations are solely within the province of the trial court. *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459 (Ky. 1990) (citations omitted).

Ultimately, the trial court's determination turns on its finding that, unlike the arguably pretextual safety claim advanced by the landlord in *Williams*, the facts at issue were more akin to those in *People v. Plane*, 274 Cal.App.2d 1 (Cal. App. 1969). Therein, Plane, a tenant in an eight-unit building, was arrested directly outside his apartment, and despite the option to return inside, he closed the door leaving the lights on and his pet unattended. *Id.* at 2-3. There had previously been a fire in the building, and knowing that the lights were on in Plane's apartment, the landlord suspected that his gas stove might also be lit. *Id.* at 3. Fearful for the safety of the building and its tenants, the landlord decided to investigate and, due to his constrained relationship with Plane, requested an officer act as a witness. *Id.* An officer responded to Plane's apartment the next day where the landlord opened the door and requested the officer follow him inside. *Id.* Inside, the officer observed marijuana plants in plain sight. *Id.*

Like the case at bar, Plane sought to suppress the evidence arguing that the landlord was without authority to enter the apartment himself or to invite the officer inside. *Id.* The *Plane* court disagreed, finding the landlord had a credible safety concern for the building and its tenants, it was reasonable the landlord would want an officer present given the difficult relationship with Plane, and the landlord was not acting as an agent of the officer. *Id.* at 3-4. Having determined the officer's presence was lawful, the *Plane* court held he did not have to blind himself to what was in plain sight simply because it was disconnected from the purpose of his presence. *Id.* at 4. Accordingly, based on the totality of the circumstances, the court concluded the officer's actions were reasonable under the Fourth Amendment. *Id.* at 4-5.

Applying *Plane*, the trial court found it was reasonable for the officers to accompany Century in its legitimate entry of the apartment given Crite's untreated schizophrenia, the significant damage to the apartment, the presence of a firearm, and because Crite's location was unknown. While Crite disagrees, citing the lack of evidence that he had ever been violent or a credible basis to believe that he was even in the apartment, the trial court's findings are supported by the evidence.

As Crite notes, "the very core of [the Fourth Amendment] is the right of a man to retreat into his own home and there be free from unreasonable

-11-

governmental intrusion." *Caniglia v. Strom*, __ U.S. __, 141 S. Ct. 1596, 1599, 209 L. Ed. 2d 604 (2021) (quoting *Florida v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) (internal quotation marks and citations omitted)). The protections of the Fourth Amendment do not prohibit all unwelcome intrusions, merely the unreasonable ones. *Id.* Because we agree that the officers, like the electrician, were merely facilitating Century's legitimate interest in entering Crite's apartment, we conclude that the trial court did not err in determining, under the totality of the circumstances, their entry into the apartment was reasonable under the Fourth Amendment.

We turn now to Crite's second claim, that the court erred by implicitly creating a community caretaker exception, which he asserts is in contravention of the Supreme Court's holding that the exception does not extend to permit warrantless entry into the home. *Caniglia*, 141 S. Ct. at 1600. The Commonwealth denies that the court applied this exception and further argues that *Caniglia* is not applicable since it was decided after Crite was sentenced. Because we agree with the Commonwealth that the court did not apply a blanket community caretaker exception, we do not reach the merits of either party's argument.

**CONCLUSION**

Therefore, and for the foregoing reasons, the order of the Daviess Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kathleen K. Schmidt
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky