Filed 10/10/13  Wolford v. American Home Mortgate Servicing CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BARBARA WOLFORD, | B237985 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC423446) |
| v. | |
| AMERICAN HOME MORTGAGE SERVICING, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Alan S. Rosenfield, Judge.  Affirmed.

Law Offices of Jina A. Nam & Associates and Jina A. Nam for Plaintiff and Appellant.

Brooks Bauer, Michael R. Brooks and Bruce T. Bauer for Defendants and Respondents.

* * * * * *

The trial court granted summary judgment in favor of defendants and respondents American Home Mortgage Servicing, Inc. (AHMSI) and Wells Fargo Bank, N.A., as Trustee for the Certificateholders of Soundview Home Loan Trust 2007-OPTI, Asset-Backed Certificates, Series 2007-OPTI (Wells Fargo), on the claims brought by plaintiff and appellant Barbara Wolford relating to the nonjudicial foreclosure of her home. We affirm. AHMSI and Wells Fargo met their threshold burden to show they satisfied the requirements necessary for nonjudicial foreclosure, and appellant failed to raise a triable issue of material fact. The trial court here was not bound by a ruling denying summary judgment in a related case and appellant was not prejudiced by asserted improprieties in the foreclosure process.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Loan Transaction.*

Appellant purchased the property located at 1832 Rockefeller Lane, Unit 8 in Redondo Beach (Property) in 1999. On February 2, 2007, appellant entered into a loan agreement (Loan) with Murray Mortgage (Murray) to borrow the principal amount of $525,000. The Loan was secured by a deed of trust (Deed of Trust) on the Property, and was designed to pay off an existing loan on the Property. The Deed of Trust named Murray as the beneficiary and Premier Trust Deed Services, Inc. as the trustee. It erroneously identified the trustor as "Barbara Wolford, A Single Man." Appellant did not notice the error.

Appellant signed both an adjustable rate note (Note) that reflected the Loan and the Deed of Trust. The Note obligated appellant to make monthly payments commencing on April 1, 2007 to Murray; it also gave Murray the express right to transfer the Note. The Deed of Trust likewise advised appellant that the Note—together with the Deed of Trust—may be sold one or more times without notice, and that Murray had the right to substitute a successor trustee. It further provided that in the event of appellant's failure to make a monthly payment when due, Murray would have the right to record a notice of default and proceed with the sale of the Property.

2

Simultaneously, appellant signed a number of documents that disclosed various features of the Loan, including a servicing disclosure statement indicating Murray's intent to immediately transfer, sell or assign the serving of appellant's Loan. The closing statement that accompanied the transaction reflected a number of fees, including a prepayment fee for appellant's existing loan and an over $6,000 origination fee. Appellant signed a notice of right to cancel, acknowledging her right to cancel the transaction within three days. Though she admitted signing the Loan documents, she denied receiving two copies of the notice and averred that the disclosures did not contain the information required by law.

In early February 2007, Murray assigned its beneficial interest in the Note and Deed of Trust (2007 Assignment) to Option One Mortgage Corporation (Option One), and Option One advised appellant of the transfer in a February 12, 2007 letter. On March 12, 2007, appellant quitclaimed her interest in the Property to Rene Rodriguez in an unrecorded deed. Appellant contended she did so in response to a dispute with her homeowner's association and that she intended to record the deed only in the event of a judgment against her.

After appellant failed to make her September and October 2007 payments, Option One sent her a letter advising she was in default and it would accelerate her Loan balance and proceed with foreclosure if she did not cure her default within 30 days. Appellant thereafter cured her default and made timely payments through the end of 2007. Appellant defaulted on her January and February 2008 payment obligations, and Option One sent her another letter informing her of the consequences of a default. Appellant made a payment in mid-March that was insufficient to cure her default.

In a March 25, 2008 telephone conversation, appellant agreed to a proposed payment plan involving an initial down payment followed by six monthly payments designed to pay off the $8,638.52 in arrears and bring the Loan current. On April 5, 2008, appellant signed the agreement reflecting this plan (First Forbearance) and made the initial down payment. Nonetheless, Option One sent appellant a letter dated April 3, 2008 indicating that the payment did not represent the total amount due and that the Loan

3

remained in default. Appellant made no further payments under the First Forbearance and it was terminated. In May 2008, appellant verbally agreed to a modified payment plan involving another down payment and eight monthly payments to bring the Loan current (Second Forbearance), but she failed to make the initial down payment. In early June 2008, appellant verbally agreed to another payment plan involving a down payment and seven monthly payments to cure the $16,801.52 arrearage and bring the Loan current (Third Forbearance). Option One transmitted a proposed agreement to appellant reflecting the terms of the Third Forbearance, but appellant failed to make the third required payment.

Effective July 1, 2008, Option One transferred the servicing of appellant's Loan to AHMSI; appellant received notice of the transfer. Appellant thereafter applied for a loan modification with AHMSI. In September 2008, appellant executed a loan modification agreement (Loan Modification) that provided for a step interest rate—as opposed to the adjustable interest rate contained in the Note—and initially reduced the monthly payment amount. According to the Loan Modification, appellant was to begin making regular monthly payments beginning on December 1, 2008. After appellant failed to make any payments on December 1, 2008 and January 1, 2009, AHMSI sent appellant a letter in mid-January 2009 advising that she was in default and AHMSI would proceed with foreclosure if she did not cure her default in 30 days. During a February 11, 2009 telephone conversation, appellant agreed to a payment plan involving her payment of an initial down payment followed by seven monthly payments to satisfy the $11,768.79 arrearage and bring the Loan current (Fourth Forbearance). AHMSI thereafter transmitted to appellant a written agreement reflecting the Fourth Forbearance, and appellant timely paid the initial down payment amount. Appellant made no payments on the Loan between March and July 2009.

Effective May 11, 2009, AHMSI assigned its beneficial interest in the Note and Deed of Trust to Wells Fargo (2009 Assignment). AHMSI vice-president Korell Harp signed the 2009 Assignment before a notary on June 9, 2009. A substitution of trustee dated May 14, 2009 (2009 Substitution) substituted AHMSI Default Services, Inc.

4

(AHMSI Default) as the trustee under the Deed of Trust. AHMSI assistant secretaries Bethany Hood and Rick Wilken signed the 2009 Substitution and their signatures were notarized on May 18, 2009. On May 15, 2009, AHMSI Default caused a notice of default and election to sell under a deed of trust (Notice of Default) to be recorded against the Property. Notice of the 2009 Substitution was mailed on July 20, 2009.

During an August 11, 2009 telephone conversation, appellant agreed to another payment plan that involved her making an initial down payment and seven monthly payments designed to pay off the $32,183.46 arrearage and bring the Loan current (Fifth Forbearance). After appellant digitally signed the Fifth Forbearance on August 16, 2009, she did not timely make the initial down payment. The next day, AHMSI Default caused a notice of trustee's sale to be recorded against the Property, notifying appellant that her Property would be sold at a public auction on September 8, 2009 if she failed to cure her default.

On August 19, 2009, appellant telephoned AHMSI regarding the notices posted on her door indicating a foreclosure sale date. The next day, appellant paid the initial down payment amount under the Fifth Forbearance. She thereafter failed to make the payment due in September and the Fifth Forbearance was terminated. In a September 25, 2009 letter, AHMSI advised appellant that her failure to comply with the terms of the Fifth Forbearance had rendered that agreement null and void, and that it would proceed with foreclosure proceedings without further demand. According to appellant, she tendered payments of $6,266.50 on September 4 and October 7, 2009.

The Property was sold at a public auction on October 8, 2009 and Wells Fargo became the owner.

On October 13, 2009, appellant filed her initial complaint. Before the hearing on a demurrer filed by AHMSI and Wells Fargo, appellant filed the operative first amended complaint, alleging 19 causes of action against AHMSI, Option One, TD Service Company and Wells Fargo.[1] AHMSI and Wells Fargo again demurred. Following a

---

[1]    Only AHMSI and Wells Fargo have appeared in this action.

5

May 2010 hearing, the trial court overruled the demurrer to the first through sixth, thirteenth, seventeenth and nineteenth causes of action, sustained the demurrer with leave to amend as to three other causes of action and sustained the demurrer without leave to amend as to all other causes of action. Appellant elected not to amend. Accordingly, the operative complaint alleged causes of action for declaratory relief; injunctive relief; determination of lien pursuant to California Uniform Commercial Code section 9313; breach of contract and the implied covenant of good faith and fair dealing; violation of the Truth in Lending Act (15 U.S.C. § 1601 et seq.); violation of the Real Estate Settlement and Procedures Act (12 U.S.C. § 2601 et seq.); rescission; unconscionability; and quiet title. AHMSI and Wells Fargo answered, denying the allegations and asserting multiple affirmative defenses.

In December 2009, the trial court in a related unlawful detainer action brought by Wells Fargo against appellant had denied summary judgment, finding triable issues of material fact with regard to the conduct of the foreclosure sale. Subsequently, in February 2010, the trial court granted appellant's ex parte application to consolidate and stay the pending unlawful detainer action.

In June 2011, AHMSI and Wells Fargo moved for summary judgment and, alternatively, for summary adjudication. In addition to several procedural arguments, AHMSI and Wells Fargo asserted that appellant's claims failed because the undisputed evidence established the nonjudicial foreclosure was conducted regularly and properly. In support of the motion AHMSI and Wells Fargo offered the declaration of AHMSI assistant secretary Cindi Ellis; copies of Loan documents; excerpts from appellant's deposition; and discovery responses. They also requested judicial notice of a number of recorded documents concerning the Property.

Appellant opposed the motion, asserting there were triable issues of fact as to whether some or all of the documents ultimately providing AHMSI Default with the authority to record the Notice of Default were void. In support of her opposition, she submitted many of the same documents relating to the Property offered by AHMSI and Wells Fargo, as well as copies of checks dated August through October 2009. She sought

6

judicial notice of documents in a Texas action filed by AHMSI against entities it alleged engaged in unauthorized "surrogate signing" on its behalf, copies of other assignments showing varying iterations of Korell Harp's signature, deeds of trust identifying appellant as "a single woman," and documents purporting to show the corporate suspension of Option One and the license revocation of Option One and AHMSI. Finally, appellant submitted her own declaration describing her Loan transactions. AHMSI and Wells Fargo filed evidentiary objections to portions of appellant's evidence.

Following a September 27, 2011 hearing, the trial court granted the motion, finding no triable issue of material fact. It did not rule on the evidentiary objections. Judgment was entered in October 2011 and this appeal followed.[2]

## DISCUSSION

Appellant contends the denial of summary judgment in the related unlawful detainer action and evidence of irregularities in the foreclosure process demonstrated triable issues of material fact warranting the denial of summary judgment. We find no merit to her contentions.

### I. Standard and Scope of Review.

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) To meet this burden, the defendant must show one or more elements of the cause of action cannot

---

[2] While the appeal was pending, we granted appellant's motion to augment the record and her request for judicial notice. We grant appellant's outstanding request for judicial notice as to Exhibits N through P and deny the request as to Exhibit Q. Exhibit N, a plea agreement, and Exhibit P, a New York state court decision, are court records (Evid. Code, § 452, subd. (d)(2)), and Exhibit O, copies of recorded documents, reflects an official governmental act (Evid. Code, § 452, subd. (c)). We do not take judicial notice of the factual matters contained within those documents. (E.g., *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.) Exhibit Q, a pooling and service agreement, is not the type of matter that is subject to judicial notice. (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1145 ["we hold the existence of a contract between private parties cannot be established by judicial notice under Evidence Code section 452, subdivision (h)"].)

be established, or that there is a complete defense to that cause of action. (Code. Civ. Proc., § 437c, subd. (o)(2); *Aguilar v. Atlantic Richfield Co., supra,* at p. 850.) Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) "'In order to avert summary judgment the plaintiff must produce *substantial* responsive evidence sufficient to establish the existence of a triable issue of material fact on the issues raised by the plaintiff's causes of action.' [Citation.]" (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.) "[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)

We review a grant of summary judgment de novo, "considering 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' [Citation.]" (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 612.) "In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue." (*Silva v. Lucky Stores, Inc., supra,* 65 Cal.App.4th at p. 261.)

"On review of summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.) Thus, "[a]lthough our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff's brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned. [Citation.]" (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; see also *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 [on appeal from summary judgment, "an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].) "'[D]e novo review

8

does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.'" (*Claudio v. Regents of University of California, supra,* at p. 230.)

In her opening brief, appellant has raised issues relating only to the effect of a ruling in another action and improprieties in the documentation leading to foreclosure. Liberally construed, her arguments address the claims asserted in her causes of action for declaratory relief, injunctive relief, determination of lien, breach of contract and quiet title. Appellant's arguments do not touch on the allegations in her causes of action for violation of federal statutes, the Truth in Lending Act and the Real Estate Settlement and Procedures Act; for rescission based on noncompliance with the Truth in Lending Act; and for unconscionability.[3] "[A]n appellant's failure to discuss a theory of liability on appeal constitutes abandonment of that theory." (*Los Angeles Equestrian Center, Inc. v. City of Los Angeles* (1993) 17 Cal.App.4th 432, 444; accord, *Walker v. Sonora Regional Medical Center* (2012) 202 Cal.App.4th 948, 957, fn. 6.) Accordingly, we deem appellant to have forfeited any challenge to summary judgment on the fifth, sixth, thirteenth and seventeenth causes of action.

## II. AHMSI and Wells Fargo Met Their Burden to Show They Were Entitled to Judgment as a Matter of Law.

Appellant's remaining causes of action challenged the nonjudicial foreclosure process. More specifically, appellant alleged that AHMSI and Wells Fargo failed to properly secure any interest in the Property entitling them to commence foreclosure proceedings; they fraudulently induced her to enter into the Loan and forbearances with

---

[3] Though appellant discussed these claims in her reply brief in response to AHMSI's and Wells Fargo's arguments, it is well established that "we do not consider arguments raised for the first time in a reply brief." (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6; accord, *Authority for California Cities Excess Liability v. City of Los Altos* (2006) 136 Cal.App.4th 1207, 1216, fn. 2; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765.)

misleading information; they recorded defective deeds and assignments; and they wrongfully refused to accept her tender of payment due before foreclosing.

"Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. . . . [¶] The statutory scheme can be briefly summarized as follows. Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. [Citations.] The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. [Citations.] After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. [Citations.] After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. [Citations.] . . . The property must be sold at public auction to the highest bidder. [Citations.] [¶] During the foreclosure process, the debtor/trustor is given several opportunities to cure the default and avoid the loss of the property." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; accord, *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440–441 [describing the comprehensive statutory framework governing nonjudical foreclosure].)

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.' [Citations.] This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. [Citation.] . . . It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity. [Citation.]" (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258; see also *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 ["a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests"]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 ["A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure and the resulting

10

prejudice'"].) "Prejudice is not presumed from 'mere irregularities' in the process. [Citation.]" (*Fontenot v. Wells Fargo Bank, N.A., supra,* at p. 272.)

Here, AHMSI and Wells Fargo met their initial burden on summary judgment to show appellant's claims lacked merit. The moving parties demonstrated they complied with the statutory scheme governing nonjudicial foreclosure sales by presenting evidence that appellant borrowed $525,000 to refinance the Property and executed the Deed of Trust as security for the Loan; the Deed of Trust granted the trustee power to sell the Property through a nonjudicial foreclosure if appellant defaulted on the Loan; appellant defaulted on the Loan on multiple occasions and each time received notice of the consequences of default; after the servicing of the Loan was transferred to AHMSI, appellant negotiated the Loan Modification with it; AHMSI assigned its beneficial interest in the Deed of Trust and Note to Wells Fargo, which in turn substituted AHMSI Default as the trustee under the Deed of Trust; appellant defaulted on the Loan Modification; AHMSI Default recorded the Notice of Default and subsequently the notice of trustee's sale; appellant did not cure her final default; and the Property was sold at a public auction. This evidence was sufficient to shift the burden to appellant to establish a triable issue on her claims. (See *Knapp v. Doherty, supra,* 123 Cal.App.4th at pp. 87–88.)

## III. Appellant Failed to Meet Her Burden to Show There Was a Triable Issue of Fact Precluding Summary Judgment.

### A. *The Ruling in the Unlawful Detainer Action Had No Preclusive Effect.*

Appellant's initial argument is that the denial of summary judgment in a related unlawful detainer action mandated the same result here. We have taken judicial notice of documents showing Wells Fargo filed an unlawful detainer action against appellant and, in December 2009, moved for summary judgment in that action. Following a December 17, 2009 hearing, the trial court denied the motion, finding "material issues of fact with regard to the conduct of the foreclosure sale." Appellant asserts that because the same factual issues were raised in the summary judgment motion filed in the unlawful detainer action and the summary judgment motion filed in this action, the trial court here

11

was required to conclude that a triable issue of material fact existed. The law is to the contrary.

Where two separate actions are involved, the doctrines of res judicata or collateral estoppel may apply to bar relitigation.[4] Under the res judicata doctrine, a party is barred from relitigating "the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) Under the collateral estoppel doctrine, a party is precluded from relitigating an issue decided in a prior litigation even if the causes of action were different. (*Ibid.*; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.) Both doctrines require that the prior proceeding result in a final judgment on the merits. (*State Bar of California v. Statile* (2008) 168 Cal.App.4th 650, 671, fn. 17; *Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1226.) Thus, a final judgment in an unlawful detainer action may bar the subsequent litigation of claims alleging irregularities in a nonjudicial foreclosure sale. (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255–258; *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 972–976.) "But an order denying summary judgment is not a final judgment and is not res judicata. [Citation.]" (*Lumbermens Mut. Cas. Co. v. Vaughn* (1988) 199 Cal.App.3d 171, 177; see also *De La Pena v. Wolfe* (1986) 177 Cal.App.3d 481, 485 [same].) Thus, the order denying summary judgment in the unlawful detainer action had no binding effect on subsequent litigation challenging the propriety of the nonjudicial foreclosure process.

### B. Appellant's Evidence Failed to Demonstrate a Material Issue of Fact Sufficient to Void the Nonjudicial Foreclosure.

Appellant contends that she offered sufficient evidence to create a triable issue of fact as to whether the nonjudicial foreclosure sale was conducted in accordance with the statutory scheme. A foreclosure may be vacated where "'there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or

---

[4] Appellant's only citation on this point is to *Alvarez v. Superior Court* (2004) 117 Cal.App.4th 1107, 1111, which involved successive rulings by different judges in a single action—circumstances distinct from those presented here.

12

unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.' [Citation.]" (*Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097–1098.) We address each claimed irregularity in turn.

### 1. Forgery.

First, appellant contends she offered evidence to establish a triable issue as to whether Korell Harp's signature on the 2009 Assignment and Bethany Hood's signature on the 2009 Substitution were forged or "robo-signed."[5] In support of her forgery allegation, appellant submitted a petition filed by AHMSI against Lender Processing Services, Inc. and DOCX, LLC, alleging in a separate action in Texas that those entities acted outside the scope of their authority in engaging in robo-signing, and examples of recorded documents signed by Korell Harp that appear to exhibit differences in his signature. She asserts that if the 2009 Assignment and 2009 Substitution were forged, then AHMSI Default lacked authority to initiate nonjudicial foreclosure proceedings. (See generally *Montgomery v. Bank of America* (1948) 85 Cal.App.2d 559, 564 ["a forged deed does not convey anything and cannot be made the foundation of a good title"].)

The prevailing view is that plaintiff homeowners lack standing to challenge the validity of robo-signatures. (*Bennett v. Wells Fargo Bank, N.A.* (N.D. Cal. 2013) 2013 WL 4104076 at *6.) "The reasoning is that the plaintiff lacks standing to contest the validity of a robo-signature, because his foreclosure was the result of not making payments and entering default, such that he did 'not suffer an injury as a result of the assignment of deed of trust, even if the assignment was fraudulent.' [Citation.]" (*Ibid*.)

---

[5] The practice of "robo-signing" has been used to "describe a robotic process of the mass production of false and forged execution of mortgage assignments, satisfactions, affidavits and other legal documents related to mortgage foreclosures and legal matters being created by persons without knowledge of the facts being attested to." (See *http://en.wikipedia.org/wiki/2010—United—States—foreclosure—crisis, as of December 27, 2011.*)

The circumstances here are no different than those in *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D. Cal. 2012) 2012 WL 3426278, where the district court accepted as true the proposition that a substitution of trustee was robo-signed but concluded such evidence failed to raise a triable issue of fact because the plaintiff lacked standing to challenge the foreclosure on that basis. The court explained: Plaintiff "Javaheri was not party to this assignment, and did not suffer any injury as a result of the assignment. Instead, the only injury Javaheri alleges is the pending foreclosure on his home, which is the result of his default on his mortgage. The foreclosure would occur regardless of what entity was named as trustee, and so Javaheri suffered no injury as a result of this substitution. [Citation.]" (*Id.* at *6; accord, *Carollo v. Vericrest Financial, Inc.* (N.D. Cal. 2012) 2012 WL 4343816 at *3 [holding homeowner-plaintiff lacks standing to complain about forgery because the "claimed injury is foreclosure. The foreclosure resulted from a default which would have occurred regardless of what entity was named as trustee. Thus, the homeowner-plaintiff does not suffer an injury as a result of the assignment of deed of trust, even if the assignment was fraudulent"]; but cf. *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1097, fn. 16 [finding forgery a question of fact under New York law].)

In accordance with the prevailing view, we conclude appellant's evidence of robo-signing was insufficient to create a triable issue of fact in the absence of any evidence of prejudice.

## 2.    Uniform Commercial Code section 9313.

Appellant next contends she raised a triable issue of fact as to whether AHMSI and Wells Fargo perfected their interests in the Note and Deed in accordance with the requirements of Uniform Commercial Code section 9313. (See Cal. U. Com. Code, §§ 9308, subd. (e) ["Perfection of a security interest in a right to payment or performance also perfects a security interest in a security interest, mortgage, or other lien on personal or real property securing the right"; 9313, subd. (a) ["a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral"].)

14

The court in *Debrunner v. Deutsche Bank National Trust Co., supra,* 204 Cal.App.4th at pages 440 to 441, rejected a similar contention, stating: "Plaintiff's reliance on the California Uniform Commercial Code provisions pertaining to negotiable instruments is misplaced. 'The comprehensive statutory framework established [in section 2924 to 2924k] to govern nonjudicial foreclosure sales is intended to be exhaustive.' [Citations.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.] 'There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.' [Citation.] Likewise, we are not convinced that the cited sections of the California Uniform Commercial Code . . . displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures. [Citations.]" We see no basis to depart from this authority and therefore conclude that AHMSI and Wells Fargo had no obligation to satisfy Uniform Commercial Code section 9313 to conduct the nonjudicial foreclosure.

### 3. Document irregularities.

Appellant next points to errors in certain documents leading to foreclosure and argues she raised a triable issue of fact as to whether those instruments were void.

She first notes that while her initial deed to the Property identified her as "BARBARA ANN WOLFORD, A SINGLE WOMAN," the Deed of Trust erroneously identified her as "BARBARA WOLFORD, A SINGLE MAN." Both the 2007 Assignment and the 2009 Assignment likewise identified appellant as a single man.[6] She contends that the misidentification raised a triable issue of fact as to whether the Deed of

---

[6] The assignment to Option One contained a handwritten notation crossing out "man" and replacing it with "woman."

Trust was void on its face.  (See Gov. Code, § 27288.1, subd. (a) [document effecting or evidencing a transfer or encumbrance of an interest in real property must contain "the name or names in which the interest appears of record"].)

Again, we conclude this evidence was insufficient to create a triable issue of material fact.  Appellant has not identified any other errors in the Deed of Trust, nor has she indicated that either the parties to the Deed of Trust or any third parties were misled by the identification of her as a single man.  Under these circumstances, the misidentification "was obviously a mere inadvertence or typographical error" that did not affect the validity of the Deed of Trust.  (*Cunnyngham v. Mason-McDuffie Co.* (1933) 218 Cal. 196, 201 [acknowledgement that erroneously used the word "they" instead of "he" held not defective]; see also *Hanlon v. Western Loan & Bldg. Co*. (1941) 46 Cal.App.2d 580, 601 [finding valid a notice of election to sell that correctly described the city in which the property was located but added an incorrect county, as under applicable rules of construction "the superfluous words 'Alameda County' could have been deleted from the notice, leaving the notice complete and correct"].)

Second, she argues that the absence of a notary seal and commission number on the acknowledgment for the 2007 Assignment raised a triable issue of fact as to whether it and subsequent transactions stemming therefrom were void.  Appellant's contention comes too late to raise a triable issue of fact.  Civil Code section 1207 provides:  "Any instrument affecting the title to real property, one year after the same has been copied into the proper book of record, kept in the office of any county recorder, imparts notice of its contents to subsequent purchasers and encumbrancers, notwithstanding any defect, omission, or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, or the absence of any such certificate . . . ."  Because the undisputed evidence showed that the 2007 Assignment was recorded in July 2007, any defect in the acknowledgment was insufficient to raise a triable issue of fact after the expiration of one year—or by July 2008—well before appellant filed her complaint.  (See *Mercantile Trust Co. v. All Persons* (1920) 183 Cal. 369, 377 [where instrument lacked a proper acknowledgment, evidence it had been recorded for more than one year "serve[d]

16

the purpose of the proof of genuineness ordinarily required as a prerequisite to the introduction in evidence of an instrument or its record"]; *Thomas v. Speck* (1941) 47 Cal.App.2d 512, 517–518 [though acknowledgment of declaration homestead was defective in that the notary did not "personally know" the declarant, the defect was cured after instrument had been on record for one year]; see also *Wilson v. Pacific Coast Title Ins. Co.* (1951) 106 Cal.App.2d 599, 602 [unacknowledged and unrecorded assignment of deed of trust, acknowledged two years after it was signed, effected "valid transfer of title"].)

Finally, appellant contends she raised a triable issue of material fact by submitting evidence that Option One was a suspended corporation and that its financial services license had been revoked.[7] She asserts that evidence of Option One's corporate suspension and/or license revocation raised a triable issue as to whether it received any interest in the Property via the 2007 Assignment. But the suspension of Option One's corporate status would not have rendered the 2007 Assignment void; contracts into which a suspended corporation enters are not void but merely voidable "at the instance of any party to the contract other than the [suspended corporation]." (Rev. & Tax. Code, § 23304.1, subd. (a); accord, *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 668–669 (*Performance Plastering*).) As a nonparty to the 2007 Assignment, appellant could not have sought to void it—only Murray could have done so. (Rev. & Tax. Code, § 23304.1, subd. (a).) Absent evidence of Murray's effort to void it, the 2007 Assignment remained valid notwithstanding the suspension of Option One's corporate status. (See *Performance Plastering, supra,* at p. 669 ["A contract entered into by a suspended corporation is not void but is merely voidable by the other party"]; *Myrick v. O'Neill* (1939) 33 Cal.App.2d 644, 648 ["'a

---

[7]     While we liberally construe appellant's evidence for the purpose of summary judgment, we note that evidence of Option One's suspension was current as of May 2010, more than three years after the 2007 Assignment was executed, and that the business address for Option One was different on the 2007 Assignment, record of corporate suspension and record of license revocation.

voidable contract is one which may be rendered null at the option of one of the parties, but is not void until so rendered,'" italics omitted].) Accordingly, evidence of Option One's suspension, without more, was insufficient to raise a triable issue as to the validity of the 2007 Assignment.

### C.      *Appellant Offered No Evidence of Prejudice.*

"The issues raised by a motion for summary judgment are framed by the pleadings. [Citation.]" (*Dromy v. Lukovsky* (2013) 219 Cal.App.4th 278, 282.)  Here, though appellant captioned her surviving claims as declaratory and injunctive relief, breach of statute, breach of contract and quiet title, her allegations were consistent with those typically pled in connection with claims for wrongful foreclosure.  By way of example, she alleged in her cause of action for injunctive relief that "[d]efendants wrongfully commenced a foreclosure action and an unlawful detainer action under the Note and conducted a non-judicial trustee sale wherein defendant WELLS FARGO obtained title as the 'beneficiary.'  Such wrongful and egregious conduct has caused Plaintiff great and irreparable injury in that real property is unique, defendant WELLS FARGO is not the original beneficiary under the Deed of Trust, defendant AHMSI is not the original trustee, and neither adequately established their standing to conduct such a sale.  And none of the defendants followed the notice requirements under 2923 et seq. Thus this sale is void and voidable."

The elements of a wrongful foreclosure claim are:  "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.  [Citations.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104.)  Appellant failed to meet her burden to raise a triable issue of fact for the independent reason she offered no evidence in support of the requisite element of prejudice.  (See Code Civ. Proc., § 437c, subd. (o)(2) [cause of action has no merit if one element cannot be established].)

18

A plaintiff seeking relief on the theory of wrongful foreclosure must demonstrate that the imperfection in the foreclosure process prejudiced her interests. (*Debrunner v. Deutsche Bank National Trust Co., supra*, 204 Cal.App.4th 443.) The type of prejudice that must be shown is "'that the foreclosure would have been averted but for [the] alleged deficiencies.' [Citations.]" (*Albano v. Cal-Western Reconveyance Corp.* (N.D. Cal. 2012) 2012 WL 5389922 at *6; see also *Ghuman v. Wells Fargo Bank, N.A.* (E.D. Cal. 2012) 2012 WL 2263276 at *5 [plaintiffs failed to show how defect in substitution of trustee was prejudicial, "given Plaintiffs have offered no facts to suggest the substitution of NDEx (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default"].) Here, the undisputed evidence showed appellant had defaulted on the Loan and Loan Modification, and she offered no evidence to show that the asserted improprieties in the foreclosure negatively affected her ability to pay or prevented her from curing her defaults.[8]

The circumstances here are therefore akin to those in *Fontenot v. Wells Fargo Bank, N.A., supra,* 198 Cal.App.4th 256, where the plaintiff sought to set aside a foreclosure on the basis of an invalid assignment of the deed of trust. The court explained: "Even if [deed of trust beneficiary] MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note [citation], nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked

---

[8]     As evidence of her attempt to cure her default, appellant offered copies of two uncashed checks dated early September and October 2009. The Fifth Forbearance, however, required that payment be made by certified check or money order. Appellant offered no evidence to show how that requirement prevented her from curing her default.

authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Id.* at p. 272.) Here, too, the lack of evidence of prejudice was fatal to appellant's claims.

## DISPOSITION

The judgment is affirmed. Parties to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

ASHMANN-GERST

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.